UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x
VANTAGE MEZZANINE FUND II PARTNERSHIP :
ACTING THROUGH VANTAGE MEZZANINE :
FUND II (PTY) LTD, :
: 1:23-cv-06852 (ALC)
*Petitioner*, :
: **OPINION**
-against- :
:
JOHN ERIC KODWO TAYLOR, :
:
*Respondent.* :
:
------------------------------------------------------------------ :
: x

**ANDREW L. CARTER, JR., District Judge:**

Petitioner Vantage Mezzanine Fund II Partnership acting through Vantage Mezzanine Fund II (Pty) Ltd ("Petitioner") seeks to confirm a foreign arbitral award or in the alternative, to recognize and enforce a foreign money judgment in favor of Petitioner and against Respondent in the amount of USD $59,398,766 plus costs and interests. For the reasons stated herein, Petitioner's supplemental petition to confirm the arbitral award is **GRANTED**.

## BACKGROUND

### I.   Statement of Facts

Petitioner is an *en commandite* partnership organized under the laws of South Arica with a registered address at 3 Melrose Boulevard, Melrose Arch, 2076, Gauteng, Johannesburg, South Africa. ECF No. 1. Respondent is an individual of Ghanaian and Maltese nationality. *Id.* He is the executive chairperson of Surfline Communications Ltd ("Surfline"), a Ghanaian company engaged in developing high-speed internet networks in Ghana. ECF. No. 3.

1

In 2014 and 2015, Petitioner and co-lender Deutsche Investitions- und Entwicklungsgesellschaft mbH ("DEG") provided a $30 million loan to Surfline. In his capacity as the chairman and controlling party of Surfline, Respondent issued a personal guarantee (the "Guarantee") to secure the $30 million loan. ECF. No. 1 ¶ 11. The Guarantee was subject to English law and provided for arbitration under the rules of the London Court of International Arbitration ("LCIA"). In early 2017, Surfline defaulted and the Respondent failed to repay the commercial loan to Petitioner and DEG.

On June 8, 2021, Petitioner filed a Notice of Arbitration, pursuant to the arbitration clause, and commenced the arbitration to be heard before the LCIA. LCIA Case 215225. In the arbitration proceeding, Petitioner asserted that the Respondent failed to repay the commercial loan pursuant to the Guarantee.

On December 21, 2022, the Tribunal before the LCIA issued a partial final award (the "Award") finding for the Petitioner and against Respondent in the amount of USD $59,398,766 plus costs and interests.

On December 30, 2022, Petitioner filed a request for recognition of the Award with the Supreme Court of Bermuda.

On March 31, 2023, the Supreme Court of Bermuda recognized the Award in full and converted it into a judgment ("the Bermudian Judgment"). The Bermudian Judgment was issued against Respondent and granted in favor of the Petitioner recovery of USD $59,398,766 plus costs and interests.

On August 2, 2023, Petitioner applied for the Award to be enforced in England as a judgment. On August 4, 2023, the High Court of England & Wales issued an order providing Respondent with 14 days to seek to set aside the judgment (the "English Judgment"), after which

the order would self-execute as a judgment in the sum of USD $59,398,766 plus costs and interest against the Respondent. The English Judgment was served on Respondent at his residence on the same day.

## II.     Procedural History

On August 4, 2023, the Petitioner filed a petition (the "Original Petition") to confirm a foreign arbitral award or in the alternative to recognize a foreign country money Judgment. ECF No. 1-4.

On October 25, 2023, Petitioner filed a supplemental petition seeking confirmation of the Award or recognition and enforcement of the English Judgment and Bermuda Judgments against the Respondent in the amount of USD $59,398,766 plus costs and interest. ECF No. 44-48.

On November 8, 2023, Respondent filed a motion to dismiss or deny Petitioner's supplemental petition to confirm a foreign arbitral award or in the alternative to recognize a foreign money judgment. ECF No. 49.

On November 15, 2023, Petitioner filed a Reply Memorandum of Law in Further Support of an Attachment Order and its Supplemental Petition to Recognize a Foreign Country Money Judgment. ECF No. 52.

On March 11, 2024, the Court entered an order terminating Respondent's motion to dismiss for lack of jurisdiction. ECF No. 53.

## STANDARD OF REVIEW

"The confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *Beijing Shougang Mining Inv. Co. v. Mongolia*, 11 F.4th 144, 160 (2d Cir. 2021). "Arbitration awards are not self-enforcing" and only go into effect when converted into judicial orders. *D.H. Blair & Co. v. Gottdiener*, 462

F.3d 95, 104 (2d Cir. 2006). The Federal Arbitration Act (FAA), 9 U.S.C. § 1, *et seq*. provides a "streamlined" process for parties seeking "a judicial decree confirming an award". 9 U.S.C. § 9; *Hall St. Assocs. L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582, (2008). "To avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation, arbitral awards are subject to very limited review." *Zurich Am. Ins. Co. v. Team Tankers A.S.*, 811 F.3d 584, 588 (2d Cir. 2016).

Under the New York Convention, a court "shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207.  Article III of the Convention directs that each signatory nation, which includes both United Kingdom and the United States, "shall recognize arbitral awards as binding and enforce them in accordance with the rules of procedure of the territory where the award is relied upon." *Id*. art. III.  Under the New York Convention, the country in which the award is made is said to have primary jurisdiction over the arbitration award. The Convention specifically contemplates that the state in which, or under the law of which, [an] award is made, will be free to set aside or modify an award in accordance with its domestic arbitral law and its full panoply of express and implied grounds for relief.... All other signatory States are secondary jurisdictions, in which parties can only contest whether that State should enforce the arbitral award. Courts in countries of secondary jurisdiction may refuse enforcement only on the limited grounds specified in Article V of the New York Convention. *Id*; Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517, Art. III.

"Article V of the Convention specifies seven exclusive grounds upon which courts may refuse to recognize an award." *Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 90 (2d Cir. 2005).  As such, a party seeking vacatur of the Award must show

4

that one of the seven exclusive grounds applies. *Id.* The "burden is a heavy one, as 'the showing required to avoid summary confirmation is high.'" *Olin Holdings Ltd. v. State*, 73 F.4th 92, 108 (2d Cir. 2023) (quoting *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir. 1997)).

>Pursuant to Article V of the Convention, a court may refuse to recognize an award where:
>
>>(a) The parties to the agreement . . . were . . . under some incapacity, or the said agreement is not valid under the law . . .; or
>>(b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings . . .; or
>>(c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration . . .; or
>>(d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties . . .; or
>>(e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

Convention, Article V.

A district court's ability to reject a foreign arbitration award in particular is "strictly limited." *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc*., 126 F.3d 15, 19 (2d Cir. 1997). A court may also decline to enforce the arbitral award where "recognition or enforcement of the award would be contrary to the public policy of the country in which enforcement or recognition is sought." *Id*. Where "[t]here is no indication that the arbitration decision was made arbitrarily, exceeded the arbitrator's jurisdiction, or otherwise was contrary to law . . . a court must grant an order to confirm an arbitration award upon the timely application of a party." *Trustees of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Galway Dev. Corp*., No. 19-

CV-278 (PAE), 2019 WL 1567713, at *3 (S.D.N.Y. Apr. 10, 2019) (internal quotation marks and citations omitted).

New York's Uniform Foreign Money–Judgments Recognition Act is the State's codification of the principles of comity. *S.C. Chimexim S.A. v. Velco Enters. Ltd*., 36 F.Supp.2d 206, 211 (S.D.N.Y.1999); N.Y. C.P.L.R. §§ 5301 et seq. A plaintiff must allege that it "holds a final, conclusive and enforceable foreign judgment." *Id*. at 213. New York need not have personal jurisdiction over litigant to recognize foreign judgment against him, since the purpose of recognizing judgment is merely to allow creditor to reach debtor's assets in New York. N.Y.McKinney's CPLR 5403. *Thomas & Agnes Carvel Found. v. Carvel*, 736 F. Supp. 2d 730 (S.D.N.Y. 2010).

## DISCUSSION

Petitioner seeks to confirm the Award because (1) the Court has federal question jurisdiction under 28 U.S.C. §1331, (2) the Court has supplemental jurisdiction with respect to recognition of the Bermudian and English Judgments pursuant to 28 U.S.C. §1367, and (3) the Court has *quasi in rem* jurisdiction over Respondent with respect to the funds in the Bank of America N.A. and Barclays Bank accounts. Petitioner further argues that the Court should confirm the Award and enter a judgment against Respondent up to the amounts of monies located in the bank accounts in the name of Respondent at Bank of America N.A. and Barclays Bank not to exceed the sum of USD $59,398,766.00 plus costs and interest because the English and Bermudian Judgments are final, conclusive, and enforceable and are in no way intermediate or interlocutory pursuant to English or Bermudian laws. Respondents, however, contend that the Court should dismiss or deny the Supplemental Petition because (1) the Court does not have

6

*quasi in rem* jurisdiction and (2) the English and Bermudian Judgments are based on egregiously excessive interest amounts that are repugnant to public policy.

### I. Confirmation of the Award

Petitioner's request to confirm the Award is granted. First, the Court has *quasi in rem* jurisdiction over Respondent with respect to the funds held by the Bank of America. Respondent has admitted that at least one of the Bank of America accounts is maintained in New York. During a conference on August 21, 2023, for example, Respondent's counsel stated that "we are aware of a joint bank account that is maintained in New York." ECF No. 50; Tr. 15:6-7. With respect to the Barclays Bank account, however, Petitioners have represented to this Court during the conference that they were withdrawing any requests to attach the Barclays account after finding that that the account "has been frozen via a London freezing order." *Id*. Tr. 4:14-23. Therefore, we consider the claim that this Court has jurisdiction over the Barclays account as moot.

Second, the Respondent has not demonstrated that one of the seven exclusive grounds of Article V applies. Under the Convention, a court "shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207. The "burden is a heavy one, as 'the showing required to avoid summary confirmance is high.'" *Olin Holdings*, 73 F.4th at 108 (citation omitted). Here, there is nothing in the record that suggests that Respondents were "under some incapacity" or that the original loan agreement was not valid under English and Bermudian law. Additionally, the Respondent was given proper notice of the Award when it was served at his London residence on August 4, 2023. Furthermore, the Award does not deal with terms that were beyond the scope of the arbitration nor has the Award been suspended by a competent authority in the United

Kingdom or Bermuda. Indeed, there are no valid grounds for refusal or deferral of recognition and enforcement of the Award under Article V of the New York Convention.[1]

## II.     Violation of Public Policy

Respondent contends that the Court should deny confirmation of the Award because the Award violates New York's public policy as it purports to enforce absurdly excessive interest components that are several multiples of the alleged loan principal. Respondent argues that "as the London award makes clear, the total loan principal is $15 million (not $30 million, as Petitioner has argued), yet the award seeks to impose a whopping and shocking interest component totaling $44,398,766." ECF. No. 49 at 2. This argument fails on two grounds. First, the "public policy exception [of Article V(2)(B) of the Convention] is to be construed very narrowly and should be applied only where enforcement would violate our most basic notions of morality and justice." *Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 315 (2d Cir. 1998). Here, the interest being charged is not "excessive" and would not be in violation of our most basic notions of morality and justice. Second, it would be inappropriate for this Court to deny confirmation on public policy grounds when the Award is otherwise final, conclusive,

---

[1] Petitioner has requested that this Court, in the alternative, recognize the English and Bermudian judgments. A New York court's decision as to whether to recognize a foreign judgment is entirely governed by C.P.L.R. Article 53. *Ocean Warehousing B.V. Baron Metals and Alloys, Inc*., 157 F. Supp. 2d 245, 249 (S.D.N.Y. 2001).  CPLR §5302 states that any foreign country judgment that is "final, conclusive and enforceable" --in the foreign country where it was rendered--is entitled to recognition under Article 53.  This excludes all intermediate and interlocutory determinations, including those for money, if under the law of the rendering jurisdiction there is any impediment to their immediate enforcement. N.Y. C.P.L.R. §5302. Here, both the English and Bermudian Judgments meet the standard set forth by C.P.L.R. §5302.  Petitioner's English counsel, Luke Zadkovich's Declaration ("Zadkovich Decl.") maintains that "no proceedings are pending in England for the purpose of contesting the validity or appealing the English Judgment", and therefore, the English Judgment is "final, conclusive, and enforceable, and is in no way intermediate or interlocutory pursuant to English law." Zadkovich Decl. ¶ 13-14. Additionally, Petitioner's Bermudian counsel Benjamin Adamson similarly states in his declaration ("Adamson Decl.") that the Bermudian Judgment is "final, conclusive, enforceable, and is in no way intermediate or interlocutory pursuant to Bermuda law." Adamson Decl. ¶15. In the alternative, the Court grants the request to recognize the English and Bermudian judgments.

and enforceable. The Respondent has not appealed these judgments and the time to appeal the Award has lapsed.

## CONCLUSION

For the reasons provided above, Petitioner's supplemental motion to confirm the arbitral award is **GRANTED**. The Clerk is directed to terminate ECF No. 44.

**SO ORDERED.**

**Dated: September 27, 2024**
      **New York, New York**　　　　　　　　　　　**ANDREW L. CARTER, JR.**
                                                   **United States District Judge**